UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
RORY WALSH,                    )
                               )
          Plaintiff,           )
                               )
          v.                   )    Civil Action No. 11-2214 (RWR)
                               )
FEDERAL BUREAU OF              )
INVESTIGATION, et al.,         )
                               )
          Defendants.          )
_____)
```

MEMORANDUM OPINION AND ORDER

Pro se plaintiff Rory Walsh, on his own behalf and as the natural guardian of minor S.J.W., brought claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., against the Federal Bureau of Investigation ("FBI").[1]  The FBI has filed a motion for summary judgment, while Walsh has filed, among other things, a motion for recusal.  Because Walsh offers no evidence that recusal is warranted, his motion for recusal will be denied.  Because there are no genuine issues in dispute and the FBI is entitled to judgment as a matter of law regarding Walsh's request for surveillance information and one investigating agent's identity, judgment will be entered for the FBI on those portions of Walsh's claim.  However, because the FBI

---

[1] He also sued the Department of Veteran Affairs ("VA"), Director James R. Clapper of the Office of the Director of National Intelligence ("ODNI") in his official capacity, and the Foreign Intelligence Surveillance Court ("FISC").  However, a previous opinion dismissed the claim against the FISC and entered judgment in favor of the ODNI and the VA.

-2-

has not carried its burden to justify withholding the names of
the agents in charge of the Harrisburg Resident Agency, that
portion of the FBI's motion will be denied.

<u>BACKGROUND</u>

The background of this case is discussed more fully in <u>Walsh
v. F.B.I.</u>, 905 F. Supp. 2d 80 (D.D.C. 2012).  Briefly, Walsh is a
former Marine Corps officer who believes that a former Marine
Commandant has been harassing him and got the FBI to make
warrantless entries into his Pennsylvania home between 2005
and 2009.  Walsh's complaint asserts that Walsh sent a FOIA
request to the FBI seeking records related to his alleged
harassment, and that the FBI did not adequately respond to his
request.  Compl. ¶¶ 22, 25, 27, 58.

In September 2011, the FBI received a letter from a
Congressman asking about the status of an attached letter
referred to as Walsh's "unanswered FOIA request" which sought
"the name and FBI agent number of the Special Agent in Charge of
the Harrisburg office," from November 2006 to the present date.
<u>Walsh</u>, 905 F. Supp. 2d at 86.  The FBI Chief of the
Record/Information Dissemination Section ("RIDS"), David Hardy,
said in a declaration filed in this case that after receiving
Walsh's "unanswered FOIA request," the FBI sent a letter to Walsh
on September 14, 2011 stating "that the Harrisburg Resident
Agency falls under the Philadelphia Field Office" and providing

-3-

Walsh with the office contact information and the name of the

Special Agent in Charge of the Philadelphia office,

George C. Venizelos.  FBI Mot. to Dis. or for Summ. J. [16], Ex.

2 ("First Hardy Decl."), ¶ 7.  Walsh stated in his own

declaration that he responded by sending to the FBI's Office of

Information Policy ("OIP") an "appeal" letter dated September 27,

2011, requesting "[t]he name of each FBI agent in charge of the

Harrisburg Resident Agency from May 2005 to the present date,"

the name of an agent who interviewed Walsh in April 2011, and

three more requests related to information about the alleged FBI

surveillance and questioning of Walsh.  <u>Walsh</u>, 905 F. Supp. 2d at

86.

> The FBI interpreted the three new requests as requests
> for "any and all information on Rory M. Walsh."
> According to Hardy, the FBI responded to these three
> new requests by sending to Walsh a letter dated
> October 12, 2011, stating that "[Walsh's] request did
> not contain sufficient information to conduct an
> adequate search of the Central Records System" and
> seeking additional information from Walsh to assist the
> FBI in locating the information Walsh sought, including
> Walsh's full name, address, date of birth, and
> telephone number. . . .  Hardy states that the letter
> advised Walsh that the FBI would close his request if
> it did not receive a response within 30 days, and that
> he could appeal the FBI's denials within 60 days.
> . . .  Hardy claims that the FBI has no record of
> receiving a response from Walsh . . . [but] Walsh
> disputes that the FBI ever sent such a letter.

<u>Id.</u> (internal citations omitted).  The FBI sent Walsh a letter on

December 9, 2011, telling him that the names of the agents in

charge of the Harrisburg Resident Agency would be withheld under

-4-

FOIA Exemptions (b)(6) and (b)(7)(C), and telling him that he had 60 days to appeal.  Id.  Walsh responded that he filed an administrative appeal, but the FBI's OIP was not able to find such an appeal in its system.  Id. at 86-87.

The FBI initially filed a motion to dismiss or for summary judgment based on Walsh's purported failure to exhaust his administrative remedies.  A November 2012 opinion denied that motion, stating in relevant part:

> The FBI argues . . . that Walsh failed to properly file an administrative appeal of the FBI's responses to his FOIA request and to exhaust his available administrative remedies.  However, the FBI does not provide factual detail to show that its searches for Walsh's responses were reasonably calculated to find his response, nor does the FBI provide any evidence, such as a return receipt, that would resolve the factual dispute about whether it mailed Walsh the October 12 letter.  Therefore, the FBI's motion for summary judgment will be denied.

Walsh, 905 F. Supp. 2d at 87.  The memorandum opinion also denied motions filed by Walsh for partial summary judgment against the FBI, for expeditious treatment of his motion for partial summary judgment against the FBI, for a writ of mandamus, and for default judgment against all defendants.

The FBI has filed a new summary judgment motion, claiming that Walsh's request for surveillance information is now moot because the FBI has conducted a more rigorous search, and has found nothing responsive to Walsh's request for any documents pertaining to warrants or surveillance, and that the names of FBI

-5-

agents can be withheld under Exemptions 6 and 7(C) of the FOIA.
Def.'s Mem. of Law in Supp. of Mot. to Dismiss or for Summ. J.
[31] ("Def.'s Second Mem.") at 1, 6-8.  Walsh opposes the FBI's
motion, arguing that the FBI's search was not sufficient and that
Exemptions 6 and 7(C) do not justify withholding the names of the
agents.  Pl.'s Opp'n at 9-10, 12-16.  Walsh also has filed, among
other things, a motion to recuse the undersigned, asserting that
the November 2012 opinion demonstrated bias.[2]

DISCUSSION

I.   RECUSAL

     Walsh has moved to recuse the undersigned under 28 U.S.C.
§ 455(a), and 28 U.S.C. § 144.  According to Walsh, recusal is
warranted because the November 2012 opinion "brought forward [the
undersigned's] open animosity and mishandling of [a related case
filed by Walsh] . . .  and [the undersigned] has denied five (5)
un-opposed motions, has made no effort to uphold the law, and
openly provided advise [sic] to the FBI for their next motion
which is not only brazen collusion with the FBI but clearly
prohibited."  Pl.'s Ex Parte Mot. for the Recusal of
Richard W. Roberts ("Pl.'s Mot.") at 1-2.

---

[2] Walsh has also moved to compel the FBI to respond to discovery
requests, for summary judgment against the FBI, and for a stay
while an interlocutory appeal of the November 2012 opinion is
decided.

-6-

Under 28 U.S.C. § 455(a), any judge "of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Likewise, under 28 U.S.C. § 144, a judge should recuse himself when a party "makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party[.]" 28 U.S.C. § 144. Thus, a judge is disqualified from presiding over any proceeding in which he or she has a personal bias or prejudice concerning a party, or where his or her impartiality might reasonably be questioned. See Ramirez v. U.S. Dept. of Justice, 680 F. Supp. 2d 208, 211 (D.D.C. 2010).

The substantive standard for recusal based on alleged bias under 28 U.S.C. § 455(a) and 28 U.S.C. § 144 "is largely the same." Klayman v. Judicial Watch, Inc, 744 F. Supp. 2d 264, 275 n.4 (D.D.C. 2010). "To the extent the standard[s] under the sections differ, it is that section 144 requires proof of actual bias whereas section 455(a) requires only the reasonable appearance of bias." Id. The standard for disqualification "is an objective one: whether a reasonable and informed observer would question the judge's impartiality." Ramirez, 680 F. Supp. 2d at 211 (citing In re Brooks, 383 F.3d 1036, 1043 (D.C. Cir. 2004); United States v. Microsoft Corp., 253 F.3d 34, 114 (D.C.

-7-

Cir. 2001).  "There is a presumption against disqualification and the moving party must demonstrate by clear and convincing evidence that disqualification is required by Section 455(a)." Ramirez, 680 F. Supp. 2d at 211 (citing Cobell v. Norton, 237 F. Supp. 2d 71, 78 (D.D.C. 2003)).  Judicial rulings "almost never constitute a valid basis for a bias or partiality motion" seeking recusal.  Murchison v. Inter-City Mortg. Corp. Profit Sharing & Pension Plans, 503 F. Supp. 2d 184, 187 (D.D.C. 2007) (citing Liteky v. United States, 510 U.S. 540, 555-56 (1994)); see also Cotton v. Washington Metro. Area Transit Auth., 264 F. Supp. 2d 39, 42 (D.D.C. 2003) (denying recusal where "claim of bias is predicated entirely upon the [magistrate judge's] rulings with respect to the conduct of discovery in the instant action, and rulings regarding discovery and other issues in three other actions filed by Plaintiffs' counsel").

Walsh bases his recusal motion upon judicial rulings, and his complaints about the denial of his motions miss the mark. Regardless of whether it was opposed, Walsh's motion for default judgment was improper because it did not provide a basis for the Clerk to calculate an amount certain,[3] nor did Walsh first seek entry of default under Rule 55(a).  Walsh's remaining motions

---

[3] Walsh filed this action pro se, yet sought $40,000 in "legal fees."

-8-

were mooted by the substance of the opinion.[4]  Finally, while Walsh characterizes the portion of the opinion denying the FBI's motion as "openly providing [advice]," that characterization proves too much, as that description could apply to every opinion that explains an unsuccessful motion's shortcomings.  The undersigned harbors no personal bias or prejudice toward any party in this case, and Walsh has made no showing that a reasonable and informed observer would question this court's impartiality.  Walsh's recusal motion will be denied.

II.  FBI'S MOTION FOR SUMMARY JUDGMENT

The FBI has moved for summary judgment on Walsh's FOIA claim.  The FBI argues that Walsh's request for surveillance information is now moot because the FBI has conducted a more rigorous search, and has found nothing responsive to Walsh's request for any documents pertaining to warrants or surveillance. Def.'s Second Mem. at 1.  Specifically, Hardy states that after the November 2012 opinion was issued, the FBI reviewed the attachments to Walsh's complaint to locate any identifying information it could use to conduct a search into the FBI's

---

[4] For those reasons, Walsh's request to certify an interlocutory appeal of the order denying his motions will be denied.  Walsh has not shown that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion or that an immediate appeal from the order would materially advance the ultimate termination of the litigation. Similarly, his motion to stay this action pending an interlocutory appeal will be denied.

-9-

Central Records System ("CRS"), the tool that the FBI uses to
conduct searches that are likely to yield documents responsive to
FOIA and Privacy Act requests.  Def.'s Second Mem., Ex. 1
("Second Hardy Decl.") ¶¶ 8, 14.  According to Hardy, the records
maintained in the CRS "consist of administrative, applicant,
criminal, personnel, and other files compiled for law enforcement
purposes," the subject matter of a file maintained in the CRS may
relate to an individual, and the FBI can use a mechanism to
search the CRS called the "Automated Case Support System."  Id.
¶ 8.  One of Walsh's attachments contained Walsh's birth date.
According to Hardy, the FBI used Walsh's birth date and a "six-
way phonetic breakdown of 'Rory Walsh'" to search the CRS to
identify any potentially responsive information.  Id. ¶ 14.
Hardy states that the FBI did not locate any search or
surveillance warrants within its files that would be responsive
to Walsh's request.  Id.  The FBI further argues that judgment
should be entered against Walsh on the request for the names of
the special agents because that information was properly withheld
under Exemptions 6 and 7(C) of the FOIA.  Def.'s Second Mem. at
6-8.  Walsh opposes, arguing that the FBI's claim that it found
no responsive warrants is untruthful, and complaining that the
government has not provided him with discovery.  Pl.'s Opp'n
at 3.  Walsh also argues that Hardy's assertion that the FBI
cannot find warrants or surveillance material regarding Walsh is

-10-

inconsistent with "the harassment" Walsh purportedly suffers at
the FBI's behest, and that the FBI incorrectly withheld the names
of the agents.  Id. at 9-13.

    In general, FOIA cases are appropriately decided on motions
for summary judgment.[5]  Defenders of Wildlife v. U.S. Border
Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  A motion for
summary judgment is appropriately granted when "the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a); see also Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir.
2009).  The moving party bears the burden of providing a
"sufficient factual record that demonstrates the absence of a
genuine issue of material fact."  Peavey v. Holder, 657 F. Supp.
2d 180, 187 (D.D.C. 2009).  In considering a motion for summary
judgment on a FOIA claim, a court may rely upon an agency's
affidavits so long as they "contain sufficient detail" and "are
not 'controverted by contrary evidence.'"  Peavey, 657 F. Supp.
2d at 188 (quoting Schrecker v. U.S. Dep't of Justice, 217 F.
Supp. 2d 29, 33 (D.D.C. 2002)).  Agency declarations are afforded
a "presumption of good faith" and can be rebutted only with
evidence that the agency did not act in good faith.  Defenders of

---

[5] They also generally do not involve discovery.  See Wolf v.
Central Intelligence Agency, 569 F. Supp. 2d 1, 9 (D.D.C. 2008)
(stating that "[d]iscovery is generally unavailable in FOIA
actions") (internal quotation omitted).  Walsh's renewed motion
for discovery and for sanctions will be denied.

-11-

Wildlife v. U.S. Dep't of the Interior, 314 F. Supp. 2d 1, 8
(D.D.C. 2004).

A.   Reasonable Search

In FOIA cases where agencies allege that they were unable to
find relevant information or plaintiffs' requests for
information, the agencies must demonstrate that they conducted
searches reasonably calculated to uncover all relevant documents.
Peavey, 657 F. Supp. 2d at 187 (citing Weisberg v. U.S. Dep't of
Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  "[A]n agency
could demonstrate appropriate, reasonable search methods by
demonstrating a 'systematic approach to document location.'"
Nance v. U.S. Federal Bureau of Investigation, 845 F. Supp. 2d
197, 202 (D.D.C. 2012) (quoting Oglesby v. U.S. Dep't of Army,
920 F.2d 57, 68 (D.C. Cir. 1990)).  "A search does not have to be
exhaustive, and whether a search is adequate is determined by
methods, not results . . .  [and an] agency's failure to locate a
specific responsive document will not, on its own, render an
otherwise reasonable search inadequate."  Nance, 845 F. Supp. 2d
at 201 (citing Brown v. FBI, 675 F. Supp. 2d 122, 125-26 (D.D.C.
2009)).

Here, the FBI has demonstrated that it is entitled to
summary judgment on Walsh's requests for warrants and other
surveillance records.  Hardy's declaration shows that despite the
FBI's unsuccessful effort to get from Walsh more identifying

-12-

information that would enable a reasonable search for responsive
records, the FBI resourcefully used information it gleaned from
Walsh's submissions in this case to conduct an appropriate,
reasonable search to find the information Walsh sought.  Hardy's
declaration explains the system used to conduct the search, why
the relevant information would be in that system, and the scope
of the search.  Walsh has not shown that the FBI's search was
inadequate, and his bare allegation that Hardy was untruthful is
insufficient to overcome the presumption of good faith accorded
to agency declarations.

B.   Exemptions 6 and 7(C)

Exemption 6 of the FOIA protects "personnel and medical
files and similar files the disclosure of which would constitute
a clearly unwarranted invasion of personal privacy."  5 U.S.C.
§ 552(b)(6).  Exemption 7(C) excludes "records of information
compiled for law enforcement purposes . . . to the extent that
production of such law enforcement records or information . . .
could reasonably be expected to constitute an unwarranted
invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).
"A record is considered to have been compiled for law enforcement
purposes if it was created or acquired in the course of an
investigation related to the enforcement of federal laws and the
nexus between the investigation and one of the agency's law
enforcement duties is based on information sufficient to support

-13-

at least a colorable claim of its rationality." <u>Quinon v. FBI</u>,

86 F.3d 1222, 1228 (D.C. Cir. 1996) (internal quotation omitted).

Exemptions 6 and 7(C) direct that agencies and courts

"'balance the privacy interests that would be compromised by

disclosure against the public interest in the release of the

requested information.'" <u>Nat'l Whistleblower Ctr. v. U.S. Dep't</u>

<u>of Health and Human Services</u>, 849 F. Supp. 2d 13, 26 (D.D.C.

2012) (quoting <u>Beck v. U.S. Dep't of Justice</u>, 997 F.2d 1489, 1491

(D.C. Cir. 1993) (internal quotation omitted)).  "'[B]ecause

Exemption 7(C) permits withholding of such records if disclosure

would constitute an unwarranted invasion of personal privacy,

while Exemption 6 requires a clearly unwarranted invasion to

justify nondisclosure, Exemption 7(C) is more protective of

privacy than Exemption 6 and thus establishes a lower bar for

withholding material.'" <u>Charles v. Office of the Armed Forces</u>

<u>Medical Examiner</u>, Civil Action No. 09-199 (RWR), 2013 WL 1224890,

at * 8 n.7 (D.D.C. March 27, 2013) (quoting <u>Am. Civil Liberties</u>

<u>Union v. U.S. Dep't of Justice</u>, 655 F.3d 1, 6 (D.C. Cir. 2011)

(internal quotations omitted)).  Despite the differences between

Exemptions 6 and 7(C), "the privacy inquiry for each is

'essentially the same[,]'" with the difference being "'the

magnitude of the public interest that is required to override the

respective privacy interests protected by the exemptions.'"

<u>Seized Prop. Recovery, Corp. v. United States Customs & Border</u>

-14-

Prot., 502 F. Supp. 2d 50, 56 (D.D.C. 2007) (quoting FLRA v. Dep't of Veteran Affairs, 958 F.2d 503, 509 (2d Cir. 1992)).  If an agency meets its burden to justify withholding information under Exemption 6, it has also met the "lighter burden" under Exemption 7(C).  Seized Prop. Recovery, Corp., 502 F. Supp. 2d at 60.

The FBI applies Exemptions 6 and 7(C) to withhold the names of the FBI agents in charge of the Harrisburg Resident Agency because the agents are "responsible for conducting, supervising and/or maintaining investigative activities[,]" and because of "the risk of harassment of these agents[.]"  Def.'s Second Mem. at 8.  Hardy explained that the names were "not appropriate for discretionary release as it is the FBI's policy to redact special agent's [sic] names below the level of Supervisory Agent in Charge."  First Hardy Decl. ¶ 15.

Here, the FBI has failed to meet its burden to justify withholding the names of the agents in charge of the Harrisburg Resident Agency.  Even if FBI redaction policy rather than the text of the FOIA and binding case law interpreting it set the standard for measuring proper application of FOIA exemptions, the FBI has not demonstrated that withholding the names of these agents was even consistent with the FBI's own policy.  Hardy implies, but does not forthrightly declare or show, that the agents who were in charge of the Harrisburg office were agents

-15-

below the level of Supervisory Agent in Charge.  The FBI's own website declares that its "[r]esident agencies are managed by supervisory special agents."  See http://www.fbi.gov/contact-us/field (as of July 3, 2013).  And the website does not conceal the identities of all former supervisory agents in charge of the Harrisburg office.[6]  Nor does the FBI assert or demonstrate that it has no responsive document that merely identifies an agent as the head of the Harrisburg office that is not a covered record compiled for law enforcement purposes in the course of an investigation.  And it is not clear at all that the risk of harassment of the head of an office elevates that agent's privacy interests above the public interest in disclosing his or her identity.  It is especially uncertain since the FBI presents no evidence that it conceals the names of the agents who head its resident agencies and field offices.  Again, its website, for example, not only names the head of the Philadelphia office, but displays his photograph and lists the names of the five Assistant Special Agents in Charge.  See http://www.fbi.gov/philadelphia (as of July 3, 2013).  While it is true that law enforcement investigators conducting investigations have a well-recognized

---

[6] The very agent to whom the FBI directed Walsh, George C. Venizelos, is identified on the FBI's website as having "served as supervisory senior resident agent for Philadelphia Division's Harrisburg Resident Agency."  See http://www.fbi.gov/philadelphia/our-leadership (as of July 3, 2013).

-16-

and substantial privacy interest in withholding information about their identities, see e.g. Nat'l Whistleblower Ctr., 849 F. Supp. 2d at 28; Marshall v. FBI, 802 F. Supp. 2d 125, 134 (D.D.C. 2011),[7] the FBI has not analyzed or explained how the balance of privacy and public interests favors concealing the mere identity of the managing head of a field office or resident agency.   That is information that would intuitively seem to be public anyway and not shielded otherwise by FBI practices.   The FBI's motion for summary judgment regarding Walsh's request for the names of the agents in charge of the Harrisburg Resident Agency will be denied.[8]

## CONCLUSION AND ORDER

Walsh has not shown that recusal is justified.   In addition, the FBI has demonstrated that it conducted a search reasonably calculated to uncover all information relevant to Walsh's FOIA request through a reasonably detailed non-conclusory affidavit, and that it properly withheld from Walsh the name of an investigating agent.   However, the FBI has not demonstrated that it properly withheld under Exemptions 6 and 7(C) the names of the

---

[7] Thus, withholding the name of the agent who interviewed Walsh in 2011 was appropriate.

[8] Walsh moves for summary judgment against the FBI in light of its failure to respond to discovery requests or produce documents in response to his FOIA requests.   Since discovery has not been ordered and the merits of the remaining FOIA disputes are addressed in this opinion, his motion will be denied.

-17-

agents who headed the Harrisburg Resident Agency.   Therefore, it
is hereby

ORDERED that the plaintiff's ex parte motion for recusal
[23] be, and hereby is, DENIED.   It is further

ORDERED that the FBI's motion [31] for summary judgment be,
and hereby is, GRANTED in part and DENIED in part.   Judgment is
entered for the FBI regarding Walsh's FOIA requests to the FBI
except the request for the names of the agents in charge of the
Harrisburg Resident Agency.   The FBI shall have 30 days from the
entry of this order to either release those names and file a
notice of compliance, or seek an appealable adverse final order.
It is further

ORDERED that the plaintiff's motions to compel [24], for
summary judgment against the FBI [25], to certify an
interlocutory appeal of the order entered November 21, 2012 [27],
and to stay pending appeal [29], be, and hereby are, DENIED.   The
Clerk is directed to notify the Court of Appeals promptly of the
disposition of Walsh's motion to certify an interlocutory appeal.
It is further

ORDERED that the FBI's motion for an extension to file a
reply brief [36] be, and hereby is, DENIED as moot.

SIGNED this 3rd day of July, 2013.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge